Good morning, Your Honors. May it please the Court. My name is Pierce Lamberson from Hunt and Andrews Kurth here on behalf of the appellant, Mr. Kenneth Jenkins. Here with me at the Council table is my colleague, Trevor Cox. Mr. Jenkins claims that he suffered a number of serious constitutional deprivations during his time as a pretrial detainee in Wilson County, North Carolina. Most significantly, Mr. Jenkins claims that staff at the detention center forced him to spend almost a week in a feces-covered suicide prevention cell where he ate his meals on the floor and wasn't allowed to wash his hands. As a result of this experience and other filthy conditions at the jail, Mr. Jenkins alleges that he began bleeding from his rectum and that prison staff denied him medical treatment for five months while heavy bleeding continued. These serious allegations deserve serious treatment from our court system, but the District Court denied Mr. Jenkins that level of attention in two critical ways. First, the District Court denied Mr. Jenkins adequate time to discover evidence supporting his claims despite binding precedent from this Court requiring additional time in Mr. Jenkins' precise circumstances. Second, District Court, over and over and without providing any meaningful explanation, denied Mr. Jenkins pleas for assistance to counsel. Even though Mr. Jenkins' serious mental illness, low IQ, and lack of formal education set him apart from the typical prose litigant. You're not normally entitled to counsel in a civil case. What makes this a case in which that entitlement is established? Well, I think, Your Honor, you're correct that you're not typically entitled to counsel in a civil case. So, this Court looks to the exceptional circumstances test under the Wisenant case. In any case, do you rely upon that case specifically? Does it drive the outcome of this case? I believe so, Your Honor. I think that's the last time that this Court, even though it was almost 40 years ago, addressed the availability of counsel in a civil case in a published opinion. And if you look at that case, you know, these are quotes from it. There, the plaintiff was uneducated generally and totally uneducated in legal matters. He could not leave the prison to interview witnesses. He had no experience with the law or legal procedures. These are things that are all true of Mr. Jenkins. And he alleged those things, or he stated those things in his response to the motion for summary judgment. And on top of that, he suffers from serious mental illness. If you look at 48 of the JA, JA 48, he has a long history of bipolar disorder, depression, and severe mood swings. And those are factors that weren't even present in Wisenant. So I think under that case, and you know, Wisenant says it's a totality of the factors test, that Mr. Jenkins was entitled to counsel here. The trial judge just went straight there. He said, well, this is exceptional circumstances. Something is individual. And he just concluded, well, this is not one of those cases. It doesn't present any exceptional circumstances. So deny the motion. That's correct, Your Honor. I mean, I don't think so. I think, you know, first of all, it was just one sentence. And I'll read it here. It's the facts of this case. We got it right here. Yeah. He said that each time. And that could be said about any defendant. There's no color there about why Mr. Jenkins' circumstances didn't entitle him to counsel in this case. So I think absolutely that that was an abuse of discretion. And so just so I understand, for you, the exceptional characteristic of this plaintiff is mental illness? That's what sets this plaintiff apart from other people in prison? Well, I think... I know you have that case, but if the standard is really like your person is... I mean, it's going to be hard for every prisoner to do, you know, to litigate a case from inside prison. So I think we need a rule that will not apply to all litigants. That's correct. And I do think his mental illness does set him apart. Over and above the fact that he looks very similar to the you know, generally and totally uneducated. I don't think that's true of all prison litigants. You know, he stated in his submissions that his IQ was 84. So I think those are factors that certainly come into play. So, sorry, it would almost be like if we thought the district court's explanation was insufficient, we would be saying, as much as we do in the sentencing context, like you need to give some individualized reason for why this putative litigant is exceptional. I think that's correct. And, you know, my friend in his brief raises the fact that the abuse of discretion standard is... looks to whether or not the decision of the district court was arbitrary and capricious. And part of the arbitrary and capricious standard is that you have to have some kind of discernible path between the facts and the conclusion. And that's all we have here is we have the facts, we have the conclusion. We don't have anything else. We don't have anything tailored to Mr. Jenkins' case. So one of the things that strikes me about this case is, I agree the explanation on counsel was quite terse. But it's not like the district court blew this case off, right? I mean, there was... the district court read the complaint generously and thought one claim survived, the conditions of confinement claim against the sheriff, and then I think at some point was prepared to add on also the deliberate indifference to medical needs claim against the same defendant. And, you know, it's pretty thorough opinion on summary judgment. I guess just I have some concern that we'd almost be creating perverse incentives. Like, you know, you could have just bounced this whole complaint in the first place and then everything would have been fine. But now we're saying that, you know, if you take a case this far, you're probably going to have to... you may well have to appoint counsel if the litigant has a low IQ or mental illness, at least. Well, I think it was... I think that might be a lot of prisoners. I think it was clear from the beginning. I mean, in his original complaint that he filed before he started asking for counsel, he detailed, you know, it was clear on the face of the complaint that he suffered from mental illness, that he had attempted to commit suicide. So I'm not sure that the error is necessarily that far down. I think from the beginning, it was clear that he was entitled to counsel. And, in fact, I think that's the most terse treatment that he got was right at the beginning of the case in the first order that the district court entered on this issue. In fairness, he hadn't exactly asked for counsel. He had asked, when can I talk to... I mean, the district court also construed some somewhat ambiguous statements as a request for counsel. That's correct. I think it was plain, though, that he expected, at least, that he would have counsel. So remedy, should we just send it back to the judge because of the terse determination here and indicate you must make additional findings or take additional considerations on whether there are exceptional circumstances here? I think that would be... You know, we're asking for that, but I think that also gets to the first issue, which is the denial of discovery under Rule 56D. I think, you know, we'd like to have the case reversed and then sent back for additional discovery with the benefit of a lawyer. Obviously, it would be very nice. So... Can I ask, on the deliberate indifference to medical needs claim, what kind of discovery would you contemplate? Because this defendant, right, is not a doctor, and he is entitled to rely on the judgment of medical personnel in the facility. So what sort of discovery do you think might show that he's somehow nevertheless liable on the deliberate indifference to medical needs? Well, so I would just turn to the summary judgment decision itself, where Judge Boyle, the district court, addressed this, and this is on JA-84. He said, it is unclear to the court whether Mr. Jenkins' stomach problems were objectively sufficiently serious. So this is the objective prong. He also thought maybe, right, the district court also thought maybe the whole thing gets kicked on the objective prong, right? Right, well, I think it's unclear, but... That's not, like, a fact question. That's the district court saying, just as a legal matter, it's not obvious to me that this satisfies the first prong of the test. Yeah, I took that to mean that he wasn't sure about whether the facts satisfied the legal test. But getting more directly to your question, I think, you know, he would be entitled to know what the sheriff and the sheriff's staff knew about Mr. Jenkins' problems and when they knew about them. What would you have to show to hold the sheriff, who is not medical personnel, is entitled to rely on the doctors? Did your client even allege at any point that the sheriff knew about his medical treatment, knew it was inadequate and approved it anyway? I don't know if they're that specific. But again, we're dealing with kind of, you know, we're dealing with the amended complaint here of somebody who hasn't had the benefit of counsel. But I think he could at least get the statements of doctors or his full medical records. Those are things that I don't think he has access to. Would you, I guess, is part of the idea, I feel like you might amend the complaint to sue one of the doctors. It's just very unusual to sue a non-medical personnel and not the medical personnel if your complaint is about your medical treatment. I mean, it's going to be very hard to hold libel with someone who is not, in fact, involved in the provision of care. I mean, perhaps. I think that would be a possibility under Rule 15 if the summary judgment decision were reversed, yeah. And I would just point you to, Judge Harris, to your opinion in Pledger on page 525 to 26. You said, We cannot know what additional information Pledger could have added to bolster his allegations. The record as it stands, though extensive, does not include all of Pledger's medical records. He was suing his doctors, and I do think it made a difference. That's correct, yeah. But in any case, if he did add the doctors, I think that would be where he could go with it. So on the discovery issue again, this Court has said over and over that Rule 5060 relief is broadly favored, liberally granted, and that's for premature summary judgment motions, not pre-discovery motions. The Court has stressed that there are three factors all present here that militate in favor of providing that relief. One, where you have a pro se litigant, which we have here. Two, where the defendant must discover evidence of subjective knowledge, which he has to do for both of his claims. And three, that the plaintiff has to discover evidence in the exclusive control of the defendant. Here, Mr. Jenkins was attempting to litigate his case from a different prison facility, too, so he wasn't still at the same facility. I don't know if Your Honors want to hear about the jurisdiction argument under Rule 3. The parties now agree that this Court has jurisdiction to review the challenge decisions. But I do think it would be a good opportunity for the Court to make clear for the litigants within the circuit that the 2020 changes to the Rule allow an appellant to simply list the final judgment on their notice of appeal rather than itemize each order that they are appealing from. And Judge Wynn will know, but there was a recent case on this issue out on Monday, the Wall Guy case, which I don't think controls here. The facts were much different. But it did acknowledge that under the amendments, courts should not interpret silence in the notice of appeal to deprive them of jurisdiction. So just turning back to the first argument quickly on additional discovery, my friend on the other side says that he was entitled to some discovery, so he shouldn't be afforded any relief. First of all, I think that's a little harsh. I don't know that Mr. Jenkins could be said to have actually conducted discovery here. There certainly was a window, but I think for all intents and purposes this was a pre-discovery motion. And second, I don't think that's the standard. I think Rule 56D is pretty clear that the focus was on whether or not the facts are available to the non-movement and whether he's able to present facts essential to his case. Is it too much to ask that if someone, even someone operating pro se, wants an extension of discovery time, they could say what it is they're trying to discover, what they will use the time for? I mean, I understand we don't require a formal affidavit and take a much more functional, practical approach to this, but I couldn't get anywhere, what would be the point of the extra time? This is what I need to go get. Do you know what I'm saying? Is a district court not entitled to say, as I think this one did, you haven't said why you need the time? Right, well, I don't... I think he did say why he needed the time. He didn't explain what discovery he would go out and get. I don't think that that was actually required of him. I don't think that's what the rule says and what the cases say. But as I said before, there's plenty of facts that he could go out and look for, including what the prison staff knew about when they knew... If we adopt that rule, is it limited to pro se litigants or would we say anybody who wants an extension for discovery just submits something saying, I'd like more time, don't say why, don't say what they're looking for, and that that might be an abuse of discretion to deny that extension motion? Well, I think that's what this course has already said in the context of pro se litigation and Pledger and Shaw, so I don't know that you'd be creating a new rule. That's what I'm asking. Would we limit it to pro se litigation or would it apply to counsel motions as well? I think that would be fair to that degree. Of course, this court has also acknowledged that same standard in counsel cases, but... You think in counsel cases we have said, if you file a motion for an extension of discovery time and all you say is, I want more time, period, that we have held in some cases that it was an abuse of discretion to deny that motion? I can't think of one. Not specific, I mean, so there's the McRae case and the Harrods case. You said a lot more than that. Yeah, yeah. I see that my time is, I'm well over my time, so... Just when we sit down, Mr. Lamperson, do you have any issue with the granting of summary judgment in this case? Yes. Oh, you didn't talk about it, but I was wondering. Well, on the merits, I addressed the procedural problems and I think that those problems would warrant reversal. Would there be a problem if the court analyzed those issues improperly or erroneously in terms of granting summary judgment? This is a question. If you don't think so, your time is up. You don't think so? Yeah, I mean, we haven't raised that issue, but I wouldn't be opposed to the court raising it to a sponte. Very well, okay. Mr. Whelan. Thank you, Your Honor, and may it please the court. My name is Emmett Whelan and I represent the appellee sheriff, Calvin Woodard. We're asking this court to affirm the district court's decisions for three reasons. First, this case is not complex under the Wiseman standard. Second, the defendant had... The decision has the summary judgment, right? I'm sorry? Summary judgment. Yes. We're asking the court to affirm the summary judgment grant, but since the procedural questions are before the court, we're asking them to affirm that there was... Summary judgment is not before us? I mean, I think the court can consider it. Absolutely it's before us. I also asked counsel. Maybe he didn't think so. Well, you didn't... What about the Short case? Didn't the district court, Short v. Harmon, didn't they look at this on a subjective standard? Is that opinion? Yes. Recently in the Short case, this court had changed the standard from the subjective prong to a fully objective prong. So if the court wants to analyze this case under that new test, I think that would be appropriate. We'd have to remand for that, wouldn't we? We'd have to on the Short. I think with the record before this court, you could affirm the district court's summary judgment grant under Short. How so? Clearly they looked for the subjective standard they used. They did not follow Short. I mean, no question on a district court judge. It wasn't there, but now it is, isn't it? Yes, but I think the district court's summary judgment order also talks about the objective evidence as the severity of the injury, and I think there's sufficient explanation that under Short, the summary judgment grant would be proper. As a matter of fact, the 14th Amendment test is solely an objective one, right? Yes, I believe that's what the court said in Short. Whether or not these were rationally related to legitimate, non-punitive governmental purpose, right? You think that here the court examined the facts of this case, this egregious case, and that standard in terms of? I think undisputedly the court didn't examine it under that standard. Why would we affirm the summary judgment? Again, that's no disrespect to the district court judge because it didn't have the case, but now that is the case. It's precedent in the Fourth Circuit. Yes, Your Honor. You know I'm familiar with that case, don't you? Yes, sir. You knew that, didn't you? Yes, sir. Right. Go ahead. I mean, in fairness, nobody has argued that, right? Yes. This is not – I mean, we would have to sort of forgive a complete forfeiture of this argument if we wanted to reach it. Yes. Yes, Your Honor. I mean, not just that argument, but no one has purported to appeal the summary judgment order on the merits. The appeal is limited to these two procedural issues. It doesn't mean we can't reach it, but it would be – Yes, to clarify, Your Honor, that's what I was saying. You could reach it, but the – Right, we could, because that's what I'm saying. Because of the egregious facts here in this case, if there's a time that we use our discretion for justice in a proper – why is this not one? Why is the government not standing in the well advocating this? Because you represent the United States. No, Your Honor, I represent – You're not the United States. You represent the government, I mean. The sheriff. Yes, Your Honor. I think this case, there are – you say the facts are egregious. I would dispute that slightly. I mean, the allegations are certainly serious. The evidence considered on summary judgment was just – Don't you have to assume on summary judgment that those facts are correct? On summary judgment, I don't think so, Your Honor. The plaintiff had simply relied on his allegations in the complaint and had offered no evidence. The only evidence the district court considered was that from the defendant. As made time and time again clear in the order, that the defendant had produced evidence, but the plaintiff had simply relied on his allegations, which I think was one of the reasons the district court granted summary judgment. Again, because his position is such a handicapped position, he tried to beg for a lawyer. He said he didn't – we should just say that it was appropriate for the court not to give him one. Clearly, in this case, it seemed like he would need one, but he didn't. And then all those things against him, and then now even when the law in terms of the new law in precedent, even that's denied him too? Well, Your Honor, I don't think there are exceptional circumstances here. As my friend on the other side argued, he's really pinning the exceptional circumstances on the mental health history. And at the time the plaintiff filed his complaint, he had attempted to commit suicide a year earlier. It had been 15 months since his suicide attempt when he first requested counsel. So I think the court – there has to be a link between the mental health and his ability to litigate the case. He certainly had a history of mental health. There's no dispute. But there was no evidence in the record that he was currently being handicapped by his history of mental health. Is that confirmed by him becoming another examination? I don't believe there's any examination in the record, but I think he – The court didn't even – it didn't make that – well, he tried to kill himself a year ago. He's cured now? No, I don't think he's cured per se, but there has to be a causal – I'm just wondering, you tell somebody depressed, go cheer up, and then that they're okay? No, not at all, Your Honor. We're sitting here as a court of law in terms of trying to adjudicate what's appropriate and fair, and then he's turned down every door. He tried to get discovery? No. In that? No. Additional time for discovery? No. Whether or not we can now consider summary judgment? No. Where is there a yes to justice? I think the district court seriously considered the plaintiff's claims as through the frivolity review, the generous readings of the initial request for counsel, and the first complaint. I think obviously he faced some difficulties as a pro se prisoner plaintiff, most of which I would describe as those of generally the hardships that someone attempting to litigate a case from prison faces. But I think the district court seriously took these claims and provided him an extension of time to respond for a motion for summary judgment. He read his claims generously, at one point indicated he may be willing to add a second claim against Sheriff Woodard. I think there was a sense of the district court taking this seriously, and that is in a certain way a form of justice. This wasn't him just being kicked out of the courthouse door and his claims not being seriously considered. I think if you look at the filing of the amended complaint as well as his other filings with the court, he certainly showed a capacity to explain his claims to the district court so that it can understand what he was seeking, the relief he was seeking, as well as being able to respond to court directives. Cases before this court such as the second Brock decision, others talk about the severity needed to meet exceptional circumstances being that of barely being able to read or write. That is certainly not present here. What do we do with the, I mean, the district court didn't expressly rely on sort of the competence of the filings to date. Yeah. Because the district court didn't say anything. But if you want to rely on that, then don't we have to worry about the affidavit that came in with the informal brief saying that wasn't me, that was a friend of mine and now he can't do it anymore? What do we do with that? The district court didn't know that, so if the district court, that just seems like a bit of a twist if we're going to rely on the competence of the pleadings. Yeah, I do think that is a bit of a twist. I think when looking at it under the abuse of discretion, the district court can only rely on what they had in front of them at the time. And that's new evidence that wasn't known to the district court. At the time, it just had the filings. And as you had mentioned earlier, you could kind of track the logic of the district court's decision. But I agree that there's still a wrench in it, but I don't think that is sufficient to overturn the district court. If we were to send it back to sort of reconsider the counsel question, that would give the district court an opportunity to consider that as well, that the prior filings had perhaps not been done by the plaintiff himself. I think certainly if you sent it back, you could consider that. I think when you look at the prior filings, there is one that seems clearly to be in a separate handwriting. I'm no handwriting expert, but that seems to me to be the one that the plaintiff may have been referring to. But as well as the amended complaint and the initial complaint and some of the other notices, they seem clearly to all be in a similar handwriting of Mr. Jenkins. And I think those alone are sufficient for him to find that there was a capacity to litigate this as a pro se plaintiff. Turning briefly to the 56D issue, the cases cited by my friend on the other side largely deal with motions that were denied when there was no discovery period. There was a four-month discovery period here, and when Mr. Jenkins asked for additional time, he simply said he had no evidence to cite and he needed assistance. Can I ask you a question about the four months? That's the period of time, am I right, between the scheduling order and when the defendant filed the motion for summary judgment? Yes. And where does the Roseboro notice fit in there? So the Roseboro notice was initially filed, sent in early April, and then I think it was returned because he changed correctional facilities, and then it was resent late April. And where does that fall in the four-month period? That would be towards the end of it. That would be about three and a half. Well, that would be over four months. That would be after we had moved for summary judgment. But then the district court did give him an extension of time to respond. So from the Roseboro order until he filed his response, I believe it was approximately seven and a half months. So if I think that practical time for discovery started running once you got the Roseboro notice, sort of saying what you had to do. Yeah. My understanding is the Roseboro order, I believe, was late April, and his deadline to file his response after its extension was December. So that would have been about seven and a half months from the Roseboro order to when his response was due. So he'd have to do his discovery after the defendant's summary judgment brief came in. I don't think he'd have to. I think he certainly had an opportunity before that with the scheduling order that was under December 3, 2020. I think that period after, maybe after the Roseboro order, he has a greater understanding and he has additional time. But that would be, I think, just over a year from that initial scheduling order. As opposed to cases where this court has found where the Rule 5060 denial was an abuse of discretion, as in Shaw, the defendant repeatedly asked for the video in possession of the prison officials. So he made a specific request for a piece of evidence. This court found that denial of a motion for additional time under Rule 5060 was an abuse of discretion. Conversely, here, there was no specific request for what type of evidence he needed. It was simply a generalized request for additional time, which the district court considered and believed it was unnecessary given the amount of time that had passed and the opportunity. If the court doesn't have any other questions, I would cede the rest of my time. Thank you. Thank you, Your Honor. Mr. Lamberson. Thank you, Your Honor. So first of all, just on your question, I think you said that you represented to my friend that we did not think the summary judgment decision was before you. I do think it's before you. You have jurisdiction to consider it. We didn't address it. It wasn't in the briefing order, and I wasn't aware of the case. But we'd be happy to... It wasn't in the briefing order? I don't believe so. You mean the briefing order we sent recently? What briefing order? Just when I was assigned to the case. That laid out the two issues we were asked to address. Yes, correct. But we'd be happy to address it, and I think the court has the discretion to address it. I just want to address the timeline, too. So... I don't think there's any way that Mr. Jenkins could be said to be dilatory, as some of the cases have put it, in this case. I think that, you know, my friend says that the discovery period started when the scheduling order was issued. If you look at the scheduling order, there's nothing on the face of the scheduling order that would suggest to a pro se litigant that discovery had started or that he was supposed to do something about it. It wasn't until the Roseboro Notice was sent out, as discussed. And also, as discussed, it didn't... There was a misfire, so it didn't actually reach him until at the earliest, you know, April 23rd. And then he responded. He's very responsive. Mr. Jenkins has been very responsive, just not competent without counsel. He responded following the directions in the Roseboro Notice, asking for relief that the Roseboro Notice said he could seek, i.e., additional time. And that was in May. And I think Mr. Jenkins believed that he was done at that point. He had responded to the summary judgment motion. It wasn't until November that the court actually ruled on those additional requests for counsel and for additional time. And then he said he had an extra month to conduct discovery. And Mr. Jenkins, indeed, responded to that. He just didn't respond as the court would have expected him to respond. I think my friend said that not all mental illness is the same, but I do think, you know, here, Mr. Jenkins had severe depression and bipolar disorder. Those are things that affect your ability to respond. It's also clear that he was heavily medicated, which is something that should be taken into consideration. Unless the court has any further questions, we would ask that you reverse summary judgment and remand with instructions to appoint Mr. Jenkins counsel. All right. Thank you, counsel. I note, Mr. Lamberson, you are court-appointed. Excuse me. I thought I heard something over there. Mr. Lamberson, you are court-appointed. We thank you on behalf of the Fourth Circuit for your representation. I note, Ms. Whalen, your representation as well. We ask the court to adjourn the court, sign and die, and we'll come down and greet counsel. This honorable court stands adjourned, sign and die. God save the United States and this honorable court.
judges: Roger L. Gregory, James Andrew Wynn, Pamela A. Harris